ROBBINS GELLER RUDMAN &
DOWD LLP
STUART A. DAVIDSON, *Pro Hac Vice*
CULLIN A. O'BRIEN, *Pro Hac Vice*
MARK DEARMAN, *Pro Hac Vice*
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cobrien@rgrdlaw.com
mdearman@rgrdlaw.com

WALDEN LAW FIRM, PLLC
RICHARD E. WALDEN, *Pro Hac Vice*
10121 N. Rodney Parham #5
Little Rock, AR 72227
Ark. Bar No. 2006069
Telephone:  501/907-7000
888/220-7933 (fax)
rwalden@waldenlawfirm.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| PHILLIP COOPER and JOSHUA PERRY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TWENTIETH CENTURY FOX HOME ENTERTAINMENT, LLC; WARNER BROTHERS ENTERTAINMENT, INC.; LIONS GATE FILMS, INC.; UNITED ARTISTS CORPORATION; UNIVERSAL PICTURES; and UNIVERSAL STUDIOS HOME ENTERTAINMENT, LLC,<br><br>Defendants | Case No.: **2:11-cv-08807-R-PJW**<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>(1)  VIOLATION OF THE UNFAIR COMPETITION LAW, CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200, *et seq;*<br><br>(2)  VIOLATIONS OF THE FALSE ADVERTISING LAW, CALIFORNIA BUISNESS AND PROFESSIONS CODE §17500, *et seq;*<br><br>(3)  VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE §1750, *et seq.*<br><br>(4)  BREACH OF EXPRESS WARRANTY UNDER |

1

CALIFORNIA LAW

(5)   UNJUST ENRICHMENT UNDER CALIFORNIA LAW

(6)   VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES FRAUD ACT, 815 ILCS 505/2

(7)   BREACH OF EXPRESS WARRANTY UNDER ILLINOIS LAW

(8)   UNJUST ENRICHMENT UNDER ILLINOIS LAW

(9)   VIOLATIONS OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT ARK. CODE ANN. §4-88-101, *et seq.*.

(10)  BREACH OF EXPRESS WARRANTY UNDER ARKANSAS LAW

(11)  UNJUST ENRICHMENT UNDER ARKANSAS LAW

DEMAND FOR JURY TRIAL

Plaintiffs Phillip Cooper ("Cooper") and Joshua Perry ("Perry") (collectively "Plaintiffs") bring this action on behalf of themselves and all other consumers similarly situated, and allege upon information and belief formed after an inquiry reasonable under the circumstances, except as to those allegations which pertain to the named Plaintiffs (which are alleged on personal knowledge), as follows:

## NATURE OF ACTION

1.   Guided by the controlling doctrine set forth by the Ninth Circuit in *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008), Plaintiffs bring this fair disclosure case against Defendants Twentieth Century Fox Home Entertainment, LLC, Warner Brothers Entertainment, Inc., Lions Gate Films, Inc., United Artists

Corporation, Universal City Studios LLC, and Universal Studios Home Entertainment LLC (collectively, "Defendants").   Through *Gerber*, the Ninth Circuit teaches that defendants who mass produce goods bear the burden of fair disclosure.   By enjoying substantial profits through the channels of commerce and mastery of their marketing campaigns, defendants cannot simply rely on the proverbial "fine print" to correct consumer perception.   Instead, disclaimers and explanations must be clear and visible to reasonable consumers.

2.     Here, the teachings of *Gerber* could not be more applicable.   Based out of California, Defendants reap enormous profits through the use interstate commerce from their respective cinematic enterprises that proliferate a constant stream of *post*-theater movies into the homes of consumers across the country.   But Defendants' disclaimers and explanations for their Blu-Ray Movie Packages containing digital copies at issue are not clear and visible.   For Defendants sell baseline DVDs and baseline Blu-Rays without the inclusion of a digital copy of the movie title.   Yet, at an approximately $10 price premium to these baseline DVDs or $5 price premium to these baseline Blu-Rays, Defendants also sell Blu-Rays that contain digital copies of the movie titles.   However, these digital copies of movie titles can only be accessed through a code contained within the Blu-Ray Movie Package itself.   And each of these codes has expiration dates.   This suit is about the nature of these expiration dates and the associated lack of disclosure by Defendants.

3.     Specifically, Plaintiffs bring this lawsuit because, due to fair disclosure problems, consumers are not able to access the digital copy codes to obtain the digital copies of the movie titles for which they paid.   Defendants are thus reaping unlawful profits from these premium-priced Blu-Ray Movie Packages that contain digital copies.   First, sometimes, the codes are already expired by the time that the Blu-Ray Movie Packages containing the digital copies are purchased.   For example, Plaintiff Perry purchased the INCREDIBLE HULK Blu-Ray Movie Package that contained a code

3

for a digital copy of the movie on February 8, 2011, but, at the point of purchase and unbeknownst to him, the code had already expired on November 10, 2009:



4.      But even when the codes are not expired at the point of purchase, the disclosures by Defendants regarding code expiration dates are unfair and deceptive. These point-of-purchase disclaimers about code expiration dates are inaccessible to reasonable consumers, and often-times appear in small print on the back of the Blu-Ray Movie Package.  For example, the back of the THE WRESTLER Blu-Ray Movie Package purchased by Plaintiff Cooper appears as follows:

4



5.     This disclosure about the expiration date for the digital copy access code is buried within the proverbial fine print on the back of the Blu-Ray Movie Package that reasonable consumers would not perceive or even think to look for at the point of purchase.  To be sure, reasonable consumers do not perceive Blu-Ray Movie Packages that contain codes for the digital copies to be similar to perishable goods like milk, bacon, or egg products where consumers would readily scour and scan the packaging of such products for expiration dates at the point of purchase.  Consumers do not want to purchase spoiled milk, bacon, or egg products and make sure that they don't at the point of purchase.   But consumers don't expect that the digital copy codes they purchase to spoil, just like milk, bacon, or egg products and, accordingly, don't scour and scan to look for expiration dates as they would for perishable consumer goods. Plaintiffs certainly did not perceive these expiration dates at the point of purchase, nor did they have reason to believe that the digital codes had expiration dates.

6.     The fact that Defendants are unlawfully reaping the benefits of the price premium consumers pay for the Blu-Ray Movie Packages that contain digital copies of the movie title is self-evident.   From the industry's own data, approximately 18% - 20% of consumers who purchase Blu-Ray Movie Packages that contain codes for digital copies of the movie title actually redeem these codes.[1]   The rest of the 80% or more of consumers are deceived by Defendants' unfair disclosure about expiration dates for the codes or are unable to even access the codes because the codes are expired at the time of purchase.

7.     There is no rational reason why consumers would willingly spend a price premium for a Blu-Ray Movie Package that contains a digital copy code for the movie title and not actually use that digital copy code unless they were deceived.   The only material difference between a baseline DVD or a baseline Blu Ray and a Blu-Ray Movie Package that contains a digital copy code for the movie title is the digital copy feature.   That difference is what justifies the higher price Defendants charge for the Blu-Ray Movie Package that contains a digital copy code for the movie title.   80% of consumers are not willingly throwing this money away, as consumers sometimes do with something like a gym membership.   It is a cliché, but true, that some consumers use the mere purchase of a gym membership (say, for instance, at the beginning of the New Year) to reap some perceived social value even if the consumer never sets foot in the gym -like the ability to say to one's peers that one "joined a gym" or, even, "joined THAT gym."   But unlike gym memberships, there is nothing cool about paying extra for a digital copy and never using it.   Consumers don't pay a $5 or $10 price *premia* for Blu-Ray Movie Packages that contain digital copy codes for the movie titles just to tell their peers about it.   Consumers spend the extra $5 or $10 in the price premium in

---

[1] http://www.deseretnews.com/article/705351288/Hollywood-hopes-an-ensemble-cast-boosts-Blu-ray.html?pg=2 (last visited December 8, 2011); http://www.dvdinformation.com/pressreleases/2010/REVISED_FINAL_Q409.pdf (last visited December 8, 2011).

order to access the digital copy, but because of Defendants' misconduct, consumers are unable to receive the benefit of their bargains.

8.     Accordingly, Plaintiffs sue Defendants seek relief on behalf of similarly-situated purchasers of Defendants' Blu-Ray Movie Packages that contain digital copy codes for the movie titles.  Plaintiffs seek damages for class members and injunctive relief to redress the unfair disclosure afflicting future purchasers.

## PARTIES

9.     Plaintiff Phillip Cooper ("Cooper") is a citizen and resident of the state of Arkansas.  Cooper currently resides in Fayetteville, Arkansas.  At two Wal-Mart stores located in Fayetteville, Arkansas, the Wal-Mart on Martin Luther King Drive, and the Wal-Mart on North Mall Avenue, Cooper purchased Blu-Ray Movie Packages with digital copy codes for the following movie titles: 1)  APPALOOSA distributed by Defendant Warner Brothers; (2) GRAN TORINO distributed by Defendant Warner Brothers; (3) VALKYRIE distributed by Defendants 20th Century Fox and Universal Artists; (4) The Wrestler distributed by 20th Century Fox; (5) 12 Rounds distributed by 20th Century Fox; (6) THE SPIRIT distributed by Lions Gate; (7) FROM PARIS WITH LOVE distributed by Lions Gate; (8) LITTLE FOCKERS distributed by Defendant Universal; and (9) COUPLES RETREAT distributed by Defendant Universal.  Cooper did not access the digital copy codes for any of these movies because Cooper was unaware of the expiration dates for the digital copy codes.  Cooper purchased the Blu-Ray Movie Packages with digital copy codes for the movie titles at a price higher than Cooper would have paid for a baseline DVD or a baseline Blu-Ray of the movie titles that do not contain digital copy codes.  Cooper purchased the Blu-Ray Movie Packages with digital copy codes for the movie titles in order to access the digital copies. Cooper would not have purchased these Blu-Ray Movie Packages with digital copy codes for the movie titles if Cooper would have known that he would be unable to access the digital copies.  Cooper was unaware, at the time and point of purchase, that

the digital copy codes he purchased had expiration dates, and had no reason to believe that the digital copy codes had such expiration dates.

10.     Plaintiff Joshua Perry ("Perry") is a citizen and resident of the state of Illinois.    Perry currently resides in Rocktown, Illinois. Perry purchased a Blu-Ray Movie Package with a digital copy code for THE INCREDIBLE HULK movie at the Target in Machesney Park, Illinois on February 8, 2011. THE INCREDIBLE HULK is produced and distributed by Defendant Universal. Perry did not access the digital copy code for THE INCREDIBLE HULK movie because it was already expired at the point of purchase. The code expired on November 10, 2009.   Perry purchased THE INCREDIBLE HULK Blu-Ray Movie Package with the digital copy code for the movie title at a price higher than Perry would have paid for a baseline DVD or baseline Blu-Ray that did not contain a digital copy code for THE INCREDIBLE HULK movie.   Perry purchased THE INCREDIBLE HULK Blu-Ray Movie Package with the digital copy codes for the movie title in order to access the digital copy.   Perry would not have purchased THE INCREDIBLE HULK Blu-Ray Movie Package with the digital copy codes for the movie title if Perry would have known that he would be unable to access the digital copy. Perry was unaware, at the point of purchase, that the digital copy code he purchased had an expiration date, and had no reason to believe that the digital copy code had an expiration date, much less an expiration date that was lapsed at the point of purchase.

11.     Defendant Twentieth Century Fox Home Entertainment, LLC ("20th Century Fox"), is, and at all times relevant was, a limited liability company organized under the laws of the state of Delaware with its headquarters and principal place of business in Los Angeles, California.   Under information and belief, beginning in March of 2008 20th Century Fox began selling Blu-Ray Movie Packages with digital copy codes for movie titles.   Since that time, 20th Century Fox has sold and continues to sell Blu-Ray Movie Packages with digital copy codes for at least 56 different movie titles.   One of the first Blu-Ray Movie Package titles with digital copy codes sold by 20th Century

Fox, HITMAN, is still on retail shelves stating that it comes with a digital copy of the movie title despite the fact that the digital access code expired on March 10, 2009.

12.     Defendant Warner Brothers Entertainment Corporation ("Warner Brothers") is, and at all times relevant was a corporation organized under the laws of the state of Delaware with a principal place of business in Burbank, California.  Under information and belief, beginning in March of 2008 Warner Brothers began selling Blu-Ray Movie Packages with digital copy codes for movie titles.  Since that time, Warner Brothers has sold and continues to sell Blu-Ray Movie Packages with digital copy codes for at least 109 different movie titles.  One of the first Blu-Ray Movie Packages with a digital copy code for the movie title sold by Warner Brothers, SISTERHOOD OF TRAVELLING PANTS 2, is still on retail shelves and in online stores purporting to have a digital copy despite the fact that the code expired on November 18, 2009.

13.     Defendant Lions Gate Films, Inc. ("Lions Gate"), is, and at all times relevant was a corporation organized under the laws of the state of Delaware with a principal place of business in Santa Monica, California.  Under information and belief, beginning in May of 2008 Lions Gate began selling Blu-Ray Movie Packages with digital copy codes for the movie title.  Since that time, Lions Gate has sold and continues to sell Blu-Ray Movie Packages with digital copy codes for at least 33 different movie titles.  One of the first Blu-Ray Movie Packages with a digital copy code for the movie title sold by Lions Gate, RAMBO, is still on retail shelves and in online stores purporting to have a digital copy despite the fact that the code expired on May 27, 2009.

14.     Defendant United Artists Corporation ("United Artists") is, and at all times relevant was a corporation organized under the laws of the state of Delaware with a principal place of business in Los Angeles, California.  United Artists took part in the production and distribution of VALKYRIE, a Blu-Ray Movie Package purchased by

Plaintiff Cooper based upon the expectation that he would receive a digital copy of the movie title with his purchase.

15.    Defendant Universal City Studios LLC ("University City"), is, and at all relevant times mentioned herein was, a limited liability company organized and existing under the laws of the state of Delaware with a principal place of business in New York, New York.

16.    Defendant Universal Studios Home Entertainment LLC ("Universal Studios") is, and at all relevant times mentioned herein was, a limited liability company organized and existing under the laws of the state of Delaware with a principal places of business in, New York, New York.

17.    Universal City and Universal Studios may be collectively referred to herein as "Universal."    Under information and belief, beginning in October of 2008, Universal began selling Blu-Ray Movie Packages with digital copy codes for movie titles.    Since that time, Universal has sold and continues to sell Blu-Ray Movie Packages with digital copy codes for the movie title for at least 52 different movie titles.  One of the first Blu-Ray Movie Packages with a digital copy code for the movie title sold by Universal, THE INCREDIBLE HULK, is still on retail shelves and in online stores purporting to have a digital copy despite the fact that the code expired on November 10, 2009.

18.    Unless specifically named otherwise, all of the Defendants in paragraphs 11 through 17 are collectively referred to herein as "Defendants."  A sampling of the Blu-Ray Movie Packages with digital copy codes for most movie titles sold by the Defendants, and the associated expiration dates, are attached hereto as **Exhibit** "**A**."

## JURISDICTION AND VENUE

19.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs are

citizens of states different from Defendants.  Further, greater than two-thirds of the Class members reside in states other than the state in which Defendants are citizens.

20.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this District and because Defendants:

   a)  are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution and sale of Blu-Ray Movie Packages in this District;

   b)  conduct substantial business in this District; and

   c)  are subject to personal jurisdiction in this District.

### BACKGROUND OF DIGITAL COPIES AND THE DIGITAL MELINIUM COPYRIGHT ACT

21.     In 1998, President William Jefferson Clinton signed into law the Digital Millennium Copyright Act ("DMCA") that amended Title 17 of the United States Code to extend the reach of copyright.

22.     Specifically, the DMCA made it a copyright violation for a consumer who purchased a DVD movie to insert the DVD movie in a computer and make a digital copy of the movie for the consumer's own personal use.  17 U.S.C. §1201.  A violation of the DMCA would entitle the copyright owner to a statutory remedy of $2,500 per copyright violation.  17 U.S.C. §1203(3).

23.     The Defendants have vigorously pursued enforcement of the DMCA in efforts to create a market for digital copies.  One example of the Defendants efforts occurred in November of 2006, in the United States District Court for the Southern District of New York *Paramount Pictures Corp., et al. v. Load 'n Go Video, Inc.,* Case No. 1:06-cv-12931-GEL (S.D.N.Y 2006).  Most of the Defendants were Plaintiffs in that lawsuit, and in that lawsuit Load 'n Go, Inc. was sued for placing digital copies of

the baseline DVD movies purchased by customers from Load 'n Go, Inc. on portable devices for their clients.

24.     Also, in November of 2006, Wal-Mart, a retail partner of the Defendants announced that:

> [N]ext year it will begin testing a video download service on its Web site. Wal-Mart did not reveal its partners, but media executives involved in the deal said that all the major studios are either on board or in active talks with the retailer, and that Hewlett-Packard is providing the technology for the download site.

> ******

> Though its video download store will officially open for business next year, Wal-Mart took a tentative first step yesterday. Customers who buy the physical DVD of Warner Brothers' "Superman Returns" in a Wal-Mart store will have the option of downloading a digital copy of the film to their portable devices for $1.97, personal computer for $2.97, or both for $3.97.[2]

25.     Evidently not all of the Defendants were on board as they had concerns about the control of the pricing for the digital copies and how they could be used to entice consumers into purchasing more expensive baseline Blu-Ray movies:

> Not every movie studio has yet formally signed onto Wal-Mart's effort. According to two studio executives involved in the negotiations, some studios are grappling over the extra charge of $1.97 to $3.97 for DVD buyers to download the movie. Some studios feel that it would be better to provide the downloads free to DVD buyers, making them clearly a

---

[2] http://www.nytimes.com/2006/11/29/technology/29bitt.html?pagewanted=print (last visited (December 8, 2011).

12

promotion, so that those prices do not become fixed in customers' minds as the going rate for movies online.[3]

26.    As a result of the Defendants' efforts, they now use these digital copies to charge a price premium for Blu-Ray Movie Packages containing digital copies with digital access codes for downloading the digital copy of movie title.  Defendants charge a price premium of approximately $10 between the Blu-Ray Movie Packages and baseline DVDs, and Defendants charge a price premium of approximately $5 between the Blu-Ray Movie Packages and the baseline Blu-Rays.

## GENERAL ALLEGATIONS

27.    The Defendants sell licenses to view their various movie titles in different formats and different combinations of those formats.  In particular, the Defendants sell movie titles in the following formats: (1) Digital Versatile Discs ("DVDs"); (2) Blu-Rays; (3) and digital copies.

28.    These formats are sold in different combinations of those formats: (1) baseline DVDs; (2) baseline Blu-Rays; (3) and Blu-Rays with digital copies.

29.    The combination of Blu-Rays with digital copies is the subject of this Complaint and shall be referred to as "Blu-Ray Movie Packages."

30.    The first baseline Blu-Ray titles were released on June 20, 2006: 50 FIRST DATES, THE FIFTH ELEMENT, HITCH, HOUSE OF FLYING DAGGERS, UNDERWORLD: EVOLUTION, XXX (all Sony), and MGM's THE TERMINATOR.[4]  A Blu-Ray is "an optical disc storage medium designed to supersede the standard DVD format.  Its main uses are for storing high-definition video, PlayStation 3 video games, and other data, with up to 25 GB per single layered, and 50 GB per dual layered disc."

---

[3] *Ibid.*
[4] http://bluray.highdefdigest.com/news/show/Sony/Disc_Announcements/Sony_Rearranges_Blu-ray_Release_Schedule/107 (last visited December 8, 2011).

31.    Baseline DVDs and baseline Blu-Rays cost the Defendants about the same amount of money to produce, yet the Defendants charge consumers on average a $10 price premium for Blu-Ray Movie Packages with digital copies of move titles.[5]  This price premium has helped the Defendants' bottom line in recent years as consumer purchases of movie titles have declined and consumer rentals and online subscription services such as Netflix have increased.

32.    The Defendants encountered two obstacles in getting consumers to convert from DVDs to Blu-Rays:  (1) consumers had to purchase new hardware to view Blu-Rays on their televisions and (2) consumers were unwilling to spend the $10 price premium for baseline Blu-Rays over the baseline DVD counterpart.  The Defendants' solution to these obstacles was to give consumers something that they could not get with their baseline DVDs:  digital copies.  And with this solution, the Defendants began packaging Blu-Rays with digital copies, i.e., Blu-Ray Movie Packages.

33.    The Defendants implemented this marketing technique in early 2008, and it was immediately a success as Blu-Ray Disc Software shipments increased from 19,250,000 units in 2007 to 82,410,00 units in 2008, an approximate 428% increase.  Further, Blu-Ray sales increased another 115% in 2009.[6]

34.    According to Defendant Warner Brothers, about 18 percent of consumers end up using their digital copies.[7]  Further, according to research done by Swicker & Associates at the request of the Digital Entertainment Group ("DEG"), the highest redemption rate in 2009 for digital copies contained within these Movie Packages was 20%.[8]

---

[5] *See* note 1 *supra*.
[6] *Ibid.*
[7] http://www.digitaltrends.com/home-theater/hollywoods-bundling-blu-ray-discs-with-standard-dvds-and-digital-copies/ (last visited December 8, 2011).
[8] *See* note 1 *supra*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

35.    The Defendants sell hundreds of different movie titles which state that upon the purchase of the movie, the purchaser will receive a Blu-Ray and a digital copy of the movie title.  The following is a sample of the packaging of some of the movie titles that Defendants sell to the public in this manner ("Sample Movie Packages"):









36.   The contents of the Blu-Ray Movie Package generally contain a Blu-Ray of the movie and a code to access the digital copy of the movie.

37.   A digital copy is a "product (DVD or Blu-ray disc) that includes either a disc with an additional digital file of the film or TV show or a code to download the file online.  One can transfer the file onto one's computer or portable media player."[9]

---

[9] http://www.amazon.com/Digital-Copy-DVD/b?ie=UTF8&node=721726011 (last visited December 9, 2011).

38.     A digital access code is a 12 to 16 digit code that permits the user to activate the digital copy of the movie or to download a digital copy of the movie.

39.     In order to redeem the digital copy, the purchaser must enter a valid digital access code.

40.     Once the purchaser makes the selection of the program that the digital copy is to be played, the purchaser is prompted for the digital access code.   After the purchaser enters the digital access code, the digital copy is downloaded to the purchaser's computer and/or media player for viewing.

41.     The following is a screen capture from Amazon.com that demonstrates the method by which a consumer can access a digital copy of the movie:

**[REMAINDER OF PAGE**
**LEFT BLANK INTENTIONALLY]**

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



27     42.    Although the front of the Blu-Ray Movie Package does not disclose it, the

28     digital access code expires if it is not entered by a random date set by each of the

Defendants, and the consumer does not get what he/she paid a premium for, a digital copy of the movie.

43.    Consistent with the Defendants' marketing strategy, the Plaintiffs and the class purchased Blu-Ray Movie Packages based upon the reasonable belief that they are buying a Blu-Ray and a digital copy of the movie.  However, in reality, the digital access code for the digital copy has expired or will expire in the near future, and the Plaintiffs do not get the digital copy of the movie they purchased. Simply put, the Defendants' use of expiration dates for digital access codes is deceptive as the front of the Blu-Ray Movie Package does not disclose that the ability to download the digital copy will expire in the near future or in some instances that it already has expired. Further, a reasonable purchaser of a Blu-Ray Movie Package would have no reason to look on the back of the Blu-Ray Movie Package to check for an expiration date because movies are not a perishable items.

44.    While the Defendants advertise and market to consumers that they are purchasing a digital copy of the movie when the purchase Blu-Ray Movie Packages, this advertising is deceptive as consumers are paying for these goods but are limited with respect to the time that they may activate the goods or in some instances these goods are being sold after the arbitrarily set expiration date for the digital access code has expired, leaving the consumer without what the consumer thought he/she had purchased, *i.e.*, the ability to obtain a digital copy of the movie.

45.    The ability to download the digital copies for the Sample Movie Packages expired on the following dates:  (1) THE JUMPER distributed by Defendant 20th Century Fox expired on June 9, 2009, (2) FOUR CHRISTMASES distributed by Defendant Warner Brothers expired on November 24, 2010 (3) THE BANK JOB distributed by Defendant Lions Gate expired on July 15, 2009; (4) THE WOLFMAN distributed by Defendant Universal expired on June 30, 2011.

19

46.     The Defendants through their retail partners continue to market the Blu-Ray Movie Packages on their online stores as containing digital copies well past the arbitrarily set expiration dates for downloading the digital copies.  For example, Wal-Mart currently advertises in its online store the Blu-Ray Movie Package for THE JUMPER as being sold with a Blu-Ray and a digital copy, yet the digital access code giving one the ability to download the digital copy of THE JUMPER expired on June 9, 2009.[10]  Moreover, Target currently advertises in its online store the Blu-Ray Movie Package for COUPLES RETREAT as being sold with a Blu-Ray and a digital copy, yet the digital access code giving one the ability to download the digital copy of COUPLES RETREAT expired on February 28, 2011.[11]  Additionally, Amazon currently advertises in its online store the Blu-Ray Movie Package for INCEPTION as being sold with a Blu-Ray and a digital copy, yet the digital access code giving one the ability to download the digital copy of Inception expired on May 6, 2011.[12]

47.     The marketing and advertising of Blu-Ray Movie Packages as Blu-Rays and digital copies in online stores is particularly deceptive because the online stores do not state that the digital copies are only available for a limited time and the Plaintiffs and the Class cannot view the miniscule print on the back of the box that contains the expiration date of the digital access code.  So, if the consumer purchases a Blu-Ray Movie Package that purports to contain Blu-Ray and a digital copy from the Defendants' retail partners' online store, the Plaintiffs and the Class do not learn that the digital access code has either expired or will expire in the future until the Plaintiffs and the Class receive the Blu-Ray Movie Package in the mail.

**SPECIFIC ALLEGATIONS RELATED TO PLAINTIFF PHILLIP COOPER**

[10] http://www.walmart.com/ip/9863268 (last visited December 9, 2011).
[11] http://www.target.com/Couples-Retreat-Discs-Digital-Blu-ray/dp/B00329VMQC (last visited December 9, 2011).
[12] http://www.amazon.com/Inception-Deluxe-Blu-ray-Shooting-Digital/dp/B004FRY9BU/ref=sr_1_2?ie=UTF8&qid=1312295569&sr=8-2 (last visited December 9, 2011).

20

48.    Plaintiff Phillip Cooper is a resident of Washington County, Arkansas.

49.    Plaintiff purchased the Blu-Ray Movie Packages for GRAN TORINO and APPALOOSA from Wal-Mart on Martin Luther King Blvd. in Fayetteville, Arkansas. Defendant Warner Brothers distributed GRAN TORINO and APPALOOSA.  The digital access code for the digital copy of GRAN TORINO expired on July 8, 2011, and the digital access code for the digital copy of APPALOOSA expired on January 6, 2010.

50.    The Defendant Warner Brother represented that the Blu-Ray Movie Package for APPALOOSA came with a digital copy of the movie title, but did not conspicuously disclose that the access code for the digital copy had an expiration date. The following is a picture of the front of the package for the APPALOOSA Blu-Ray Movie Package on the date that Cooper purchased the APPALOOSA Blu-Ray Movie Package:



51.     The following are pictures of the actual packages, including the digital access code contained on the inside of the actual Blu-Ray Movie Package for APPALOOSA that Plaintiff Cooper purchased:

 

52.     The Defendant Warner Brother represented that the Blu-Ray Movie Package for GRAN TORINO came with a digital copy of the movie title, but did not conspicuously disclose that the access code for the digital copy had an expiration date. The Blu-Ray Movie Package for GRAN TORINO looked like this on the date that Cooper purchased GRAN TORINO and the following is an actual picture of the Blu-Ray Movie Package for GRAN TORINO that Cooper purchased:



53.    Cooper purchased the Blu-Ray Movie Packages FROM PARIS WITH LOVE and THE SPIRIT from the Wal-Mart on Martin Luther King Blvd. or North Mall Ave. in Fayetteville, Arkansas.  Defendant Lions Gate distributed FROM PARIS WITH LOVE and THE SPIRIT.  The access code for the digital copy of FROM PARIS WITH LOVE expired on June 8, 2011, and the access code for the digital copy of THE SPIRIT expired on April 14, 2010.

54.    The Defendant Lions Gate represented that the Blu-Ray Movie Package for FROM PARIS WITH LOVE came with a digital copy of the movie title, but did not conspicuously disclose that the access code for the digital copy had an expiration date. The Blu-Ray Movie Package for FROM PARIS WITH LOVE looked like this on the date Cooper purchased it:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17

55.   The following are actual pictures of the Blu-Ray Movie Package for FROM

18

PARIS WITH LOVE that Plaintiff Cooper purchased:

19
20
21
22
23

**[REMAINDER OF PAGE**

24

**LEFT BLANK INTENTIONALLY]**

25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17
18
19
20

56.   The Defendant Lions Gate represented that the Blu-Ray Movie Package for THE SPIRIT came with a digital copy of the movie title, but did not conspicuously disclose that the access code for the digital copy had an expiration date.  The Blu-Ray Movie Package for THE SPIRIT looked like this on the date Cooper purchased it:

21
22
23
24
25
26
27
28

**[REMAINDER OF PAGE**
**LEFT BLANK INTENTIONALLY]**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17   57.   The following are actual pictures of Plaintiff Cooper's Blu-Ray Movie

18   Package for THE SPIRIT.  The digital copy sticker on the front of the package in the

19   previous paragraph is not currently present on Plaintiff Cooper's Blu-Ray Movie

20   Package because the sticker was present on the cellophane, and Plaintiff Cooper

21   removed the cellophane in opening his Blu-Ray Movie Package for THE SPIRIT.  The

22   Movie Package for THE SPIRIT still states that it comes with a digital copy on the back

23   of the Blu-Ray Movie Package for THE SPIRIT:

24

25                          **[REMAINDER OF PAGE**

26                    **LEFT BLANK INTENTIONALLY]**

27

28

1
2
3
4
5
6
7
8
9
10



11   58.    Cooper purchased the Blu-Ray Movie Packages 12 ROUNDS, THE WRESTLER,

12   and VALKYRIE from Wal-Mart on Martin Luther King Blvd. or North Mall Ave. in

13   Fayetteville, Arkansas.   Defendant 20th Century Fox distributed 12 ROUNDS, THE

14   WRESTLER, and VALKYRIE.  Defendant United Artists also distributed VALKYRIE.  The

15   access code for the digital copy of 12 ROUNDS expired on June 29, 2011, the access

16   code for the digital copy of THE WRESTLER expired on April 20, 2011, and the access

17   code for the digital copy of VALKYRIE expired on April 20, 2011.

18   59.    The Defendant 20th Century Fox represented that the Blu-Ray Movie

19   Package for 12 ROUNDS came with a digital copy of the movie title, but did not

20   conspicuously disclose that the access code for the digital copy had an expiration date.

21   The Blu-Ray Movie Package for 12 ROUNDS looked like this on the date Cooper

22   purchased it:

23

24

25                         **[REMAINDER OF PAGE**

26                    **LEFT BLANK INTENTIONALLY]**

27

28

27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17   60.   The following are actual pictures of Plaintiff Cooper's Blu-Ray Movie
18   Package for the 12 ROUNDS.  The digital copy sticker on the front of the package in the
19   previous paragraph is not currently present on Plaintiff Cooper's Blu-Ray Movie
20   Package because the sticker was present on the cellophane, and Plaintiff Cooper
21   removed the cellophane in opening his Blu-Ray Movie Package for 12 ROUNDS.  The
22   Blu-Movie Package for 12 ROUNDS still states that it comes with a digital copy on the
23   back of the Blu-Ray Movie Package for 12 ROUNDS:

24
25                        **[REMAINDER OF PAGE**
26                  **LEFT BLANK INTENTIONALLY]**
27
28

 

61.    The Defendant 20th Century Fox represented that the Blu-Ray Movie Package for THE WRESTLER came with a digital copy of the movie title, but did not conspicuously disclose that the access code for the digital copy had an expiration date. The Blu-Ray Movie Package for THE WRESTLER looked like this on the date Cooper purchased it:

**[REMAINDER OF PAGE**
**LEFT BLANK INTENTIONALLY]**

1

2

3

4

5

6

7

8

9

10

11

12

13

14



15     62.   The following are actual pictures of Plaintiff Cooper's Blu-Ray Movie

16  Package for the THE WRESTLER.   The Blu-Ray Movie Package for THE WRESTLER

17  states that it comes with a digital copy on the back of the Blu-Ray Movie Package for

18  THE WRESTLER:

19

20

21

22

23

24

25

26

27

28

 

63.     The Defendants 20th Century Fox and United Artists represented that the Blu-Ray Movie Package for VALKYRIE came with a digital copy of the movie title, but did not conspicuously disclose that the access code for the digital copy had an expiration date.  The Blu-Ray Movie Package for VALKYRIE looked like this on the date Cooper purchased it:

**[REMAINDER OF PAGE**

**LEFT BLANK INTENTIONALLY]**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

 

16    64.    The following are actual pictures of Plaintiff Cooper's Blu-Ray Movie
17  Package for VALKYRIE.  The digital copy sticker on the front of the package in the
18  previous paragraph is not currently present on Plaintiff Cooper's Blu-Ray Movie
19  Package because the sticker was present on the cellophane, and Plaintiff Cooper
20  removed the cellophane in opening his Blu-Ray Movie Package for VALKYRIE.  The
21  Movie Package for Valkyrie still states that it comes with a digital copy on the back of
22  the Blu-Ray Movie Package for VALKYRIE:

23
24
25                     **[REMAINDER OF PAGE**
26                **LEFT BLANK INTENTIONALLY]**
27
28

1
2
3
4
5
6
7
8
9
10



11
12   65.     Cooper purchased the Blu-Ray Movie Packages for LITTLE FOCKERS and

13   COUPLES RETREAT from Wal-Mart on Martin Luther King Blvd. or North Mall Ave. in

14   Fayetteville, Arkansas.   Defendant Universal distributed the LITTLE FOCKERS and

15   COUPLES RETREAT.   The access code for the digital copy of LITTLE FOCKERS expired

16   on September 23, 2011, and the access code for the digital copy of COUPLES RETREAT

17   expired on February 28, 2011.

18   66.     The Defendant Universal represented that the Blu-Ray Movie Package for

19   LITTLE FOCKERS came with a digital copy of the movie title, but did not conspicuously

20   disclose that the access code for the digital copy had an expiration date.   The Blu-Ray

21   Movie Package for LITTLE FOCKERS looked like this on the date Cooper purchased it,

22   and the following is an actual picture of the Blu-Ray Movie Package for LITTLE

23   FOCKERS that Cooper purchased:

24
25
26                           **[REMAINDER OF PAGE**
27                       **LEFT BLANK INTENTIONALLY]**
28

33



67.    The Defendant Universal represented that the Blu-Ray Movie Package for COUPLES RETREAT came with a digital copy of the movie title, but did not conspicuously disclose that the access code for the digital copy had an expiration date. The Blu-Ray Movie Package for COUPLES RETREAT looked like this on the date Cooper purchased it, and the following is an actual picture of the Blu-Ray Movie Package for COUPLES RETREAT that Cooper purchased:

**[REMAINDER OF PAGE
LEFT BLANK INTENTIONALLY]**



68.    Plaintiff Cooper purchased the Blu-Ray Movie Packages described in the previous paragraphs because he believed the digital copy of the movie and a digital access code had not expired and/or did not expire.

### SPECIFIC ALLEGATIONS RELATED TO PLAINTIFF JOSHUA PERRY

69.    Perry purchased the Blu-Ray Movie Package THE INCREDIBLE HULK from Target in Machesney Park, Illinois, on February 8, 2011.    Defendant Universal distributed THE INCREDIBLE HULK.    The digital access code for the digital copy expired on November 10, 2009, over a year prior to Perry's purchase of the Blu-Ray Movie Package.

70.    The Defendant Universal represented that the Blu-Ray Movie Package for THE INCREDIBLE HULK came with a digital copy of the movie title, but did not conspicuously disclose that the access code for the digital copy had an expiration date nor did it disclose that the digital access code for the digital copy had expired well over 15 months ago.    The Blu-Ray Movie Package for THE INCREDIBLE HULK looked like this on the date Perry purchased it:




71.   Plaintiff Perry purchased THE INCREDIBLE HULK Blu-Ray Move Package because he believed the digital copy of the movie and a digital access code that had not expired or did not expire.

## CLASS ACTION ALLEGATIONS

72.   Plaintiffs bring this action on behalf of themselves and all others similarly situated (the "Class") in accordance with Rule 23 of the Federal Rules of Civil Procedure.

73.   Plaintiffs believe that certification of nationwide classes under California law is proper given Defendants' conduct that affects consumers across the country, including Plaintiffs, but which emanates from Defendants' use of California as base to

commit the challenged conduct alleged herein.  Assuming that California law applies to Plaintiffs' claims on behalf of a nationwide class, Plaintiffs seek certification of the following class:

> Plaintiff Class (the "Class" and "Class members"):
>
> All persons within the United States who purchased a Blu-Ray Movie Package with a digital copy code for the movie title, sold, manufactured, distributed, or produced by Defendants.

Alternatively, if this Court determines that California law does not apply to Plaintiffs' claims on a nationwide basis, Plaintiffs seek certification of the following classes:

> All persons within the state of Arkansas who purchased a Blu-Ray Movie Package with a digital copy code for the movie title, sold, manufactured, distributed, or produced by Defendants.
>
> All persons within the state of Illinois who purchased a Blu-Ray Movie Package with a digital copy code for the movie title, sold, manufactured, distributed, or produced by Universal.

74.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.  Specifically excluded from the proposed Class are the Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

75.    ***Numerosity.***  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the proposed Class contains many thousands of members.  The precise number of

Class members is unknown to Plaintiffs.  The true number of Class members is known by the Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and/or by published notice.

76.   ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.   These common legal and factual questions include, but are not limited to, the following:

> a)  whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;
>
> b)  whether the Defendants' alleged conduct violates public policy;
>
> c)  whether the alleged conduct constitutes violations of the laws asserted herein;
>
> d)  whether the Defendants' engaged in false or misleading advertising;
>
> e)  whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and
>
> f)  whether Plaintiffs and Class members are entitled to declaratory relief.

77.   ***Typicality.***  Plaintiffs' claims are typical of the claims of the members of the Class in that the Defendants were unjustly enriched as a result of Plaintiffs' and the Classes' respective purchases of Blu-Ray Movie Packages.

78.   ***Adequacy of Representation.***  Plaintiffs will fairly and adequately protect the interests of the members of the Class.   Plaintiffs have retained counsel highly experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no adverse or antagonistic interests to those of the Class.

79.   ***Superiority.***  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.   The damages or other financial detriment suffered by individual Class members is relatively small compared to the

burden and expense that would be entailed by individual litigation of their claims against the Defendants.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.   Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

80.    In the alternative, the Class may also be certified because:

a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c) Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

81.    The claims asserted herein are applicable to all customers who purchased the Blu-Ray Movie Packages with digital copies that have digital access codes with expiration dates.

39

82.    Adequate notice can be given to Class members directly using information maintained in Defendants' records or through notice by publication.

83.    Damages may be calculated, in part, from the sales information maintained in Defendants' records, so that the cost of administering a recovery for the Class can be minimized.  However, the precise amount of damages available to Plaintiffs and the other members of the Class is not a barrier to class certification.

84.    Unless a class is certified, Defendants will retain monies received as a result of its conduct that was taken from Plaintiffs and proposed Class members.

## CAUSES OF ACTION

## COUNT I

**Violations of California Business & Professions Code §17200 *et seq*.,**
**on Behalf of Plaintiffs and Class Members Against All Defendants**

85.    Plaintiffs hereby adopt and incorporate by reference paragraphs 1 through 84 as if fully set forth herein.

86.    Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice.  Section 17200 specifically prohibits any "unlawful . . . business act or practice."

87.    Defendants have violated §17200's prohibition against engaging in an unlawful act or practice by, inter alia, selling and issuing and/or agreeing to sell and issue Blu-Ray Movie Packages that digital copies with access codes subject to expiration dates that are not conspicuously disclosed on the packaging of the Blu-Ray Movie Packages.

88.    Section 17200 prohibits any "unfair . . . business act or practice." As described in the preceding paragraphs, Defendants engaged in the unfair business practice of selling Blu-Ray Movie Packages with access code for downloading digital

copies that had expired or would expire in the near future without conspicuously disclosing on the packaging of the Blu-Ray Movie Package that the access code for the digital copies had expired or would expire in the near future.

89.   Defendants' business practices, as detailed above, are unethical, oppressive and unscrupulous, and they violate fundamental policies of this State. Further, any justifications for Defendants' wrongful conduct are outweighed by the adverse effects of such conduct. Thus, Defendants engaged in unfair business practices prohibited by California Business & Professions Code §17200 *et seq.*

90.   Section 17200 also prohibits any "fraudulent business act or practice." Defendants violated this prong of the UCL by disseminating and/or agreeing to disseminate, through online advertising and retail partners and other promotional channels, misleading and partial statements about Blu-Ray Movie Packages that have a tendency to mislead the public. Further, Defendants violated this prong of the UCL by omitting material information about Blu-Ray Movie Packages and particularly the digital access code for the digital copy of the movie expired with the intent to induce reliance by consumers to purchase Blu-Ray Movie Packages with digital copies instead of the cheaper baseline DVD or baseline Blu-Ray. Defendants' claims, nondisclosures and misleading statements concerning the Blu-Ray Movie Packages and digital copies, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of California Business and Professions Code §17200.

91.   Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendants engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code §17200.

92.   Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and other Class members. Plaintiffs were harmed at least in the following

41

ways as they: (1) acquired less in the transaction for their Blu-Ray Movie Packages than they would have absent Defendants' unlawful and deceptive conduct; (2) had their present and future interest in the full value of their Blu-Ray Movie Packages diminished; (3) were deprived of money to which they have a cognizable claim; and (4) entered into transactions, costing them money, that would otherwise have been unnecessary absent Defendants' unlawful and deceptive conduct. Thus, Plaintiffs have suffered injury in fact and lost money as a result of Defendants' unfair conduct.

93.     Additionally, pursuant to California Business & Professions Code §17203, Plaintiffs seek an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to return the full amount of money improperly collected to all those who have paid them.

## COUNT II

### False and Misleading Advertising in Violation of California Business & Professions Code §17500, *et seq.*, on Behalf of Plaintiffs and Class Members Against All Defendants

94.     Plaintiffs hereby adopt and incorporate by reference paragraphs 1 through 84 as if fully set forth herein.

95.     California Business & Professions Code §17500 *et seq.* prohibits various deceptive practices in connection with the dissemination in any manner of representations which are likely to deceive members of the public to purchase products and services such as the Blu-Ray Movie Packages with digital copies offered by Defendants.

96.     Defendants' acts and practices as described herein have deceived and/or are likely to deceive Plaintiffs and Class members. Defendants use their websites, television, radio and print advertising, along with other social media, such as Facebook and Twitter, to extensively market and advertise that Blu-Ray Movie Packages come with digital copies of movie titles and digital access codes that have not or do not

expire.  The sale of the Blu-Ray Movie Packages as containing digital copies without conspicuously disclosing that the digital access codes for accessing the digital copies expire is misleading and represents other deceptive terms to consumers incident to their purchase of Blu-Ray Movie Packages.

97.     By their actions, Defendants have been and are disseminating uniform advertising concerning Blu-Ray Movie Packages, which by its nature is unfair, deceptive, untrue, or misleading within the meaning of California Business & Professions Code §17500, *et seq*. Such advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons detailed above.

98.     Defendants intended for the Plaintiffs and Class members to rely upon the advertisements and numerous material misrepresentations as set forth more fully elsewhere in the Complaint. In fact, Plaintiffs and Class members relied upon the advertisements and misrepresentations to their detriment.

99.     The above described false, misleading, deceptive advertising Defendants disseminated continues to have a likelihood to deceive in that Defendants have failed to disclose the true and actual limitations of their Blu-Ray Movie Packages and the digital access codes required for downloading the digital copy of the movie title. Defendants have failed to instigate a public information campaign to alert consumers of these limitations, which continues to create a misleading perception of the Blu-Ray Movie Packages.

## COUNT III

**Violations of the Consumer Legal Remedies Act, California Civil Code §1750 *et seq*., on Behalf of Plaintiffs and Class Members Against All Defendants**

100.  Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 84 as if set forth herein.

101.  The California Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq*. provides protection for California consumers against unfair, deceptive and

unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services.

102. Plaintiffs and the Class are "consumers" as defined by Cal. Civ. Code §1761(d). The Blu-Ray Movie Packages sold and issued by the Defendants constitute "goods" and "services" as defined by Cal. Civ. Code §1761(a) and (b), and Plaintiffs' and Class members' purchases of the "goods" constitutes "transactions," as that term is defined in Cal. Civ. Code §1761(e).

103. Defendants' ongoing placement of illegal expiration dates and imposition of other deceptive sales terms on the Blu-Ray Movie Packages violate the following subsections of Cal. Civ. Code §1770(a) in these respects:

(5)   Defendants' acts and practices constitute misrepresentations that Blu-Ray Movie Packages have characteristics, benefits or uses which they do not have;

(7)   Defendants misrepresented that the Blu-Ray Movie Packages and/or more exactly the digital copies and digital access code are of a particular standard, quality and/or grade, when they are of another;

(9)   Defendants' acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

(14)  Defendants' acts and practices fail to represent that the transaction involving Blu-Ray Movie Packages confers or involves obligations that are prohibited by law, particularly the failure to conspicuously disclose that the digital access code for downloading the digital copy of the movie expires or will and expire in the near future and other onerous sales terms;

(16)  Defendants' acts and practices constitute representations that the Blu-Ray Movie Packages have been supplied in accordance with previous representations when they have not; and

(19)  Defendants inserted unconscionable provisions in the contract for the purchase of the Blu-Ray Movie Packages, specifically the Defendants arbitrarily set and

44

failed to conspicuously disclose at the point of purchase that the digital access code for downloading the digital copy of the movie title expires or has already expired and other onerous, one-sided restrictions as to the access of the digital copy incident to the purchase of the Blu-Ray Movie Packages.

104.   By reason of the foregoing, Plaintiffs and the Class haven been irreparably harmed, entitling them to injunctive relief, actual damages, disgorgement, restitution, punitive damages and any other relief that the court deems proper.

105.   Defendants' failure to conspicuously disclose that the digital access codes for accessing the digital copy of the movie title and imposition of other deceptive sales terms as set forth more fully elsewhere in this Complaint were false, deceptive, and/or misleading and in violation of the CLRA.

106.   Pursuant to §1782 of the CLRA, Plaintiffs notified Defendants in writing of the particular violations of §1770 of the CLRA and demanded Defendants rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so. Plaintiffs sent this notice by certified mail, return receipt requested, to Defendants' principal place of business in California.

107.   Defendants have failed to rectify or agree to rectify the problems associated with the actions detailed above and failed to give notice to all affected consumers within 30 days after receipt of the §1782 notice, thus Plaintiffs and all other members of the Class seek actual damages and punitive damages for violation of the CLRA.

108.   In addition, pursuant to Civil Code §1780(a)(2), Plaintiffs and Class members are entitled to, and therefore seek, a court order enjoining the above-described wrongful acts and practices that violate Cal. Civ. Code §1770.

109.   Plaintiffs and Class members are also entitled to recover attorneys' fees, costs, expenses and disbursements pursuant to Cal. Civ. Code §§1780 and 1781.

**COUNT IV**

**Breach of Express Warranty**
**On Behalf of Plaintiffs and Class Members Against All**
**Defendants under California Law**

110.   Plaintiffs hereby adopt and incorporate by reference paragraphs 1 through 84 as if fully set forth herein.

111.   Plaintiffs, and each member of the Class, formed a contract with the Defendants at the time the Plaintiffs and the other members of the Class purchased the Blu-Ray Movie Packages.   The terms of the contract include the promises and affirmation of fact made by the Defendants on their Blu-Ray Movie Package labels and through their marketing campaigns, including but not limited to the promise that the Blu-Ray Movie Package came with an accessible digital copy of the movie title, as described above.   The labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is a party of a standardized contract between Plaintiffs and the members of the Class on the one hand, and the Defendants on the other.

112.   All conditions precedent to the Defendants' liability under this contract have been performed by Plaintiffs and the Class.

113.   Defendants breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing the Blu-Ray Movie Packages which could provide the benefits described above.

114.   As a result of the Defendants' breach of contract, Plaintiffs and the Class have been damaged in the amount of the purchase of the Movie Packages with Digital Copies and Digital Access Codes they purchased.

**COUNT V**

**Unjust Enrichment**
**On Behalf of Plaintiffs and Class Members Against**
**All Defendants under California Law**

115.   Plaintiffs hereby adopt and incorporate by reference paragraphs 1 through 84

46

as if fully set forth herein.

116.   This Count is brought in the alternative.

117.   Plaintiffs and the Class conferred a benefit upon Defendants by paying for a product with benefits that could not be provided or delivered.

118.   Defendants voluntarily accepted and retained the benefit of the monies paid by Plaintiffs and the Class.

119.   Defendants have been enriched, at the expense of Plaintiffs and the Class by retaining monies from purchasers of Blu-Ray Movie Packages for benefits which they did not provide.

120.   Plaintiffs and the other members of the Class who have paid for benefits that could not be provided or delivered by Defendants have been damaged as a result of Defendants' unjust enrichment and are entitled to a refund, plus interest thereupon.

121.   As a direct and proximate result of Defendants' misconduct, Plaintiffs and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement in the amount necessary to restore them to the position they would have been in if Defendants have not retained monies for benefits which they could not provide or deliver.

122.   Plaintiffs and the Class have no adequate remedy at law.

## COUNT VI

**VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES FRAUD ACT, 815 ILCS 505/2**
**(Alternative Count Against Universal Only by Plaintiff Perry Only)**

123.   Plaintiff Perry, in the alternative to the counts above, but incorporating the prior allegations contained in paragraphs 1 through 84 as if stated herein, alleges the instant count.

124.   The Illinois Fraud and Deceptive Business Practices Fraud Act ("ICFA") provides that Universal may not employ "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of

any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of any material fact, with intent that other rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2.

125. Universal illegally sold and collected monies from the Plaintiff Perry as Universal sold Blu-Ray Movie Packages with digital access codes for downloading digital copies that had digital access codes which would expire in the near future and/or that had digital access codes with expiration dates that had already expired at the point and time of purchase.

126. The fact that the digital access codes for the digital copies were subject to expiration dates which were not conspicuously disclosed on the Blu-Ray Movie Packages was/is an omission of material that resulted in Plaintiff Perry's purchase of a Blu-Ray Movie Package containing a digital access code that had already expired or would expired in the near future.

127. Universal's failure to conspicuously disclose the expiration dates on the Blu-Ray Movie Packages was/is an omission of a material fact that resulted in the Plaintiff Perry's purchase of Blu-Ray Movie Package with a digital access code for downloading a digital copy that had already expired or would expire in the near future.

128. Plaintiff Perry paid a price premium for the Blu-Ray Movie Package as opposed to a baseline DVD and/or baseline Blu-Ray of the same movie.

129. Universal intended for Plaintiff Perry to rely on the Universal's deceptive practices and Plaintiff Perry's reliance induced him to purchase the Blu-Ray Movie Package. Universal's deception occurred during the marking and sale of the Blu-Ray Movies Package in the course of trade and commerce. As a result of the Universal's violations of the ICFA as described herein, Plaintiff Perry has been harmed and suffered actual damages.

# COUNT VII

## BREACH OF EXPRESS WARRANTY UNDER ILLINOIS LAW
### (Alternative Count Against Universal Only by Plaintiff Perry Only)

130.   Plaintiff Perry in the alternative to the counts above, but incorporating the prior allegations contained in paragraphs 1 through 84 as if stated herein, alleges the instant count.

131.   Universal sells consumer goods and Universal is merchant within the meaning of 810 ILCS 5/2-313.

132.   In the course of commerce Universal describes the Blu-Ray Movie Packages as coming with digital copies.

133.   Universal's representation that the Blu-Ray Movie Packages come with digital copies of the movie titles form part of the basis of the bargain for the Blu-Ray Movie Packages in that it creates an express warranty that the Blu-Ray Movie Packages come with digital access codes that permit one to access digital copies of the movie titles.

134.   Universal has committed a breach of express warranty pursuant to 810 ILCS 5/2-313 because Universal's Blu-Ray Movie Packages state that they come with digital copies of the movie titles, but the digital access codes that permit access to the digital copies of the movie title expire. Consumers, and particularly Plaintiff Perry, do not get what they thought they were purchasing because the digital access code for accessing the digital copy of the movie title expires in the near future and/or the digital access code that purportedly gave Plaintiff Perry the ability to access the digital copy of the movie title had expired prior to his purchase of the Blu-Ray Movie Package.

135.   As a proximate result of Universal's breach of express warranty, Plaintiff Perry has suffered and will suffer damages.

## COUNT VIII

### UNJUST ENRICMENT UNDER ILLINOIS LAW
**(Alternative Count Against Universal Only by Plaintiff Perry Only)**

136.   Plaintiff Perry in the alternative to the counts above, but incorporating the prior allegations contained in paragraphs 1 through 84 as if stated herein, alleges the instant count.

137.   As a result of the conduct described above, Universal has been and will be unjustly enriched at the expense of Plaintiff Perry.

138.   Specifically, the Universal's unfair and illegal actions as described above have enabled the Universal to receive money and other benefits in violation of Illinois law at the expense of Plaintiff Perry.  Universal's receipt and retention of this financial benefit is unfair and improper under the circumstances.

139.   Universal should be required to disgorge the money retained as a result of the unjust enrichment.

## COUNT IX

### VIOLATIONS OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT
### ARK. CODE ANN. §4-88-101, *et seq.*
**(Alternative Count Against Defendants by Plaintiff Cooper Only)**

140.   Plaintiff Cooper in the alternative to the counts above, but incorporating the prior allegations contained in paragraphs 1 through 84 as if stated herein, alleges the instant count.

141.   This cause of action is brought under the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101, *et seq*. ("ADTPA").  ADTPA is designed to protect consumers from deceptive, unfair and unconscionable trade practices.  The ADTPA is a remedial statute which is to be liberally construed in favor of consumers.

142.   Pursuant to Ark. Code Ann. §4-88-113(f), "[a]ny person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter has a cause of action to recover actual damages, if appropriate, and reasonable attorney's fees."

143.   As alleged herein, the Defendants' wrongful actions relating to the marketing and promotion of Blu-Ray Movie Packages violates Ark. Code Ann. §§4-88-107(a)(1) and (3), and 4-88-108(1) and (2).

144.   The Defendants violated the act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

145.   Plaintiff Cooper and the Class have been aggrieved by the Defendants' deceptive practices in that they have paid more for the Blu-Ray Movie Packages than what the Blu-Ray Movie Packages were worth and/or Plaintiff Cooper would not have purchased the Blu-Ray Movie Packages but for the Defendants' deceptive practices.

146.   Plaintiff Cooper paid a price premium as described herein for the Blu-Ray Movie Packages as opposed to baseline DVDs and/or baseline Blu-Rays because Cooper was deceived by the packing and labeling of the Blu-Ray Movie Packages. Specifically, the Defendants stated on the Blu-Ray Movie Packages that the Blu-Ray Movie Packages included digital copies, but failed to conspicuously that the digital access code for accessing the digital copy had an expiration date or that the expiration date had already expired at the point and time of purchase.

147.   Plaintiff Cooper would not have purchased the Blu-Ray Movie Packages had he known that the digital access codes for accessing the digital copies had expired or would expire in the near future.

148.   The damages suffered by Plaintiff Copper were directly and proximately caused by the deceptive, misleading and unconscionable practices of the Defendants, as more fully described herein.

### COUNT X

**BREACH OF EXPRESS WARRANTY UNDER ARKANSAS LAW**
**(Alternative Count Against Defendants by Plaintiff Cooper Only)**

149.   Plaintiff Cooper in the alternative to the counts above, but incorporating the

prior allegations contained in paragraphs 1 through 84 as if stated herein, alleges the instant count.

150.   Plaintiff Cooper formed a contract with each of the Defendants at the time Plaintiff Cooper purchased Blu-Ray Movie Packages.   The terms of that contract include the promises and affirmations of fact made by the Defendants on the Blu-Ray Movie Package labels and through their marketing, as described above.  This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff Cooper on the one hand, and the Defendants on the other.

151.   All conditions precedent to Defendants' liability under this contract, including notice, have been provided by Plaintiff Cooper to each of the Defendants.

152.   Defendants breached the terms of this contract, including the express warranties contained on the packaging and labels of the Blu-Ray Movie Packages as described herein, with Plaintiff Cooper by not providing the Blu-Ray Movie Packages with digital access codes for accessing the digital copies of the movie titles that had not expired or did not expire in the future.

153.   As a result of the Defendants' breach contract and warranties, Plaintiff Cooper has been damaged in the amount of the purchase price of the Blu-Ray Movie Packages he purchased.

## COUNT XI

### UNJUST ENRICMENT UNDER ARKANSAS LAW
**(Alternative Count Against Defendants by Plaintiff Cooper Only)**

154.   Plaintiff Cooper in the alternative to the counts above, but incorporating the prior allegations contained in paragraphs 1 through 84 as if stated herein, alleges the instant count.

155.   As a result of the conduct described above, the Defendants have been and will be unjustly enriched at the expense of Plaintiff Cooper.

156.   Specifically, the Defendants' unfair and illegal actions as described above have enabled the Defendants to receive money and other benefits in violation of Arkansas law at the expense of Plaintiff Cooper.  Defendants' receipt and retention of this financial benefit is unfair and improper under the circumstances.

157.   Defendants should be required to disgorge the money retained as a result of the unjust enrichment.

## PRAYER FOR RELIEF

Plaintiffs, individually, and on behalf of the Class, pray for judgment and relief against Defendants as follows:

A.   For an order declaring this a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed classes described herein and appointing Plaintiff to serve as class representative and Plaintiffs' counsel Robbins Geller Rudman & Dowd LLP and Walden Law Firm, PLLC to serve as Counsel for the Class;

B.   For an order enjoining Defendants from continuing to sell Blu-Ray Movie Packages without conspicuously disclosing the actual expiration dates of the digital access codes that permit the Plaintiffs and the Class to access the digital copy on the front of Blu-Ray Movie Packages;

C.   For an order requiring Defendants to fund a corrective advertising campaign in order to remedy their wrongful and illegal conduct;

D.   For an order awarding restitution of the monies Defendants wrongfully acquired by Defendants' wrongful and illegal conduct;

E.   For an order requiring disgorgement of monies wrongfully obtained as a result of Defendants' wrongful and illegal conduct;

F.   For compensatory and punitive damages, including actual and statutory damages, arising from wrongful and illegal conduct;

G.  For an award of reasonable attorneys' fees and all costs and expenses incurred in the course of prosecuting this action;

H.  For pre-judgment and post-judgment interest at the legal rate; and

I.  For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

DATED: December 9, 2011

ROBBINS GELLER RUDMAN
& DOWD LLP

CULLIN A. OBRIEN

STUART A. DAVIDSON, *Pro Hac Vice*
CULLIN A. O'BRIEN, *Pro Hac Vice*
MARK DEARMAN, *Pro Hac Vice*
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone: 561/750-3000
561/750-3364 (fax)

WALDEN LAW FIRM, PLLC
RICHARD E. WALDEN
10121 N. Rodney Parham #5
Little Rock, AR  72227
Telephone: 501/907-7000
888/220-7933 (fax)

*Attorneys for Plaintiffs*

54

## DECLARATION OF SERVICE BY OVERNIGHT MAIL

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of Broward, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 120 E. Palmetto Park Road, Suite 500, Boca Raton, FL  33432.

2.     That on December 9, 2011, declarant served the First Amended Complaint via overnight delivery on the following parties:

Robert J. Herrington
Greenberg Traurig, LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404
herringtonr@gtlaw.com

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 9, 2011, at Boca Raton, Florida.

_____
CULLIN A. O'BRIEN

# EXHIBIT "A"

| MOVIE NAME | Expiration Date | Studio | Date Released |
|---|---|---|---|
| Wall Street:  Money Never Sleeps | "Two Years from Purchase Date" | 20th Century Fox | 12/21/2010 |
| The A-Team | "Two Years from Purchase Date" | 20th Century Fox | 12/14/2010 |
| Ramona and Beezus | "Two Years from Purchase Date" | 20th Century Fox | 11/9/2010 |
| Machete | "Two Years from Purchase Date" | 20th Century Fox | 1/4/2011 |
| X-Men:  First Class | "Limited Time Only" | 20th Century Fox | 9/9/2011 |
| The Boondock Saints (Truth and Justice Edition) | "Limited Time Only" | 20th Century Fox | 6/14/2011 |
| Diary of a Wimpy Kid:  Rodrick Rules | "Limited Time Only" | 20th Century Fox | 6/21/2011 |
| Big Mommas: Like Father, Like Son | "Limited Time Only" | 20th Century Fox | 6/14/2011 |
| Knight and Day | 11/30/2012 | 20th Century Fox | 11/30/2010 |
| Just Wright | 9/14/2012 | 20th Century Fox | 9/14/2010 |
| Date Night | 8/10/2012 | 20th Century Fox | 8/10/2010 |
| Diary of a Wimpy Kid | 8/3/2012 | 20th Century Fox | 8/3/2010 |
| Our Family Wedding | 7/13/2012 | 20th Century Fox | 7/13/2010 |
| Percy Jackson & the Olympians:  The Lightning Thief | 6/29/2012 | 20th Century Fox | 7/29/2010 |
| Tooth Fairy | 5/3/2012 | 20th Century Fox | 5/4/2010 |
| Crazy Heart | 4/19/2012 | 20th Century Fox | 4/20/2010 |
| Fantastic Mr. Fox | 3/22/2012 | 20th Century Fox | 3/23/2010 |
| Whip It | 1/25/2012 | 20th Century Fox | 1/26/2010 |
| Post Grad | 1/11/2012 | 20th Century Fox | 1/12/2010 |
| Jennifer's Body | 12/28/2011 | 20th Century Fox | 12/29/2009 |
| Family Guy Presents:  Something, Something, Something Dark Side | 12/21/2011 | 20th Century Fox | 12/22/2009 |
| All About Steve | 21-Dec | 20th Century Fox | 12/22/2009 |
| 500 Days of Summer | 12/21/2011 | 20th Century Fox | 12/22/2009 |
| Night at the Museum:  Battle of the Smithsonian | 11/30/2011 | 20th Century Fox | 12/1/2009 |
| Aliens in the Attic | 11/2/2011 | 20th Century Fox | 11/3/2009 |
| Ice Age:  Dawn of the Dinosaurs | 10/26/2011 | 20th Century Fox | 10/27/2009 |
| Predators | 10/19/2011 | 20th Century Fox | 10/19/2010 |
| X-Men Origins:  Wolverine | 9/21/2011 | 20th Century Fox | 9/15/2009 |
| Miss March | 7/27/2011 | 20th Century Fox | 7/28/2009 |

| MOVIE NAME | Expiration Date | Studio | Date Released |
|---|---|---|---|
| Street Fighter:  The Legend of Chun-Li | 6/29/2011 | 20th Century Fox | 6/30/2009 |
| 12 Rounds | 6/29/2011 | 20th Century Fox | 6/30/2009 |
| Dragonball:  Evolution | 6/27/2011 | 20th Century Fox | 7/28/2009 |
| The Day The Earth Stood Still | 6/6/2011 | 20th Century Fox | 4/7/2009 |
| Taken | 5/11/2011 | 20th Century Fox | 5/12/2009 |
| Slumdog Millionaire | 4/30/2011 | 20th Century Fox | 3/31/2009 |
| Bride Wars | 4/27/2011 | 20th Century Fox | 4/28/2009 |
| X-Men: United | 4/20/2011 | 20th Century Fox | 9/23/2008 |
| X-Men:  The Last Stand | 4/20/2011 | 20th Century Fox | 9/23/2008 |
| X-Men | 4/20/2011 | 20th Century Fox | 9/23/2008 |
| The Wrestler | 4/20/2011 | 20th Century Fox | 4/21/2009 |
| Notorious | 4/20/2011 | 20th Century Fox | 4/21/2009 |
| Marley & Me | 3/30/2011 | 20th Century Fox | 3/31/2009 |
| The Rocker | 1/26/2011 | 20th Century Fox | 1/27/2009 |
| Max Payne | 1/19/2011 | 20th Century Fox | 1/20/2009 |
| Mirrors | 1/12/2011 | 20th Century Fox | 1/13/2009 |
| Babylon A.D. | 1/5/2011 | 20th Century Fox | 1/6/2009 |
| Horton Hears A Who | 12/8/2010 | 20th Century Fox | 12/9/2008 |
| X-Files:  I Wanted to Believe | 12/1/2010 | 20th Century Fox | 12/2/2008 |
| The Happening | 10/6/2010 | 20th Century Fox | 10/7/2008 |
| What Happens In Vegas | 8/25/2010 | 20th Century Fox | 8/26/2009 |
| Street Kings | 8/18/2010 | 20th Century Fox | 8/19/2010 |
| Jumper | 6/9/2009 | 20th Century Fox | 6/10/2008 |
| Juno | 4/14/2009 | 20th Century Fox | 4/15/2008 |
| Aliens vs. Predator: Requiem | 4/14/2009 | 20th Century Fox | 4/15/2008 |
| Hitman | 3/10/2009 | 20th Century Fox | 3/11/2008 |
| The Crow | 10/18/2012 | Lionsgate | 10/18/2011 |
| Good Will Hunting | 8/30/2012 | Lionsgate | 8/30/2011 |
| Spy Kids 3:  Game Over | 8/2/2012 | Lionsgate | 8/2/2011 |
| Spy Kids 2:  The Island of Lost Dreams | 8/2/2012 | Lionsgate | 8/2/2011 |
| Spy Kids | 8/2/2012 | Lionsgate | 8/2/2011 |
| The Lincoln Lawyer | 7/12/2012 | Lionsgate | 7/12/2011 |
| The Next Three Days | 3/8/2012 | Lionsgate | 3/8/2011 |
| Saw:  The Final Chapter | 1/25/2012 | Lionsgate | 1/25/2011 |
| The Expendables | 11/23/2011 | Lionsgate | 11/23/2010 |
| Alpha & Omega | 11/8/2011 | Lionsgate | 1/11/2011 |
| Kick-Ass | 8/3/2011 | Lionsgate | 8/3/2010 |
| From Paris with Love | 6/8/2011 | Lionsgate | 6/8/2010 |
| Daybreakers | 5/11/2011 | Lionsgate | 5/11/2010 |
| Valkyrie | 4/20/2011 | Lionsgate | 5/19/2009 |

| MOVIE NAME | Expiration Date | Studio | Date Released |
|---|---|---|---|
| Hero | 3/15/2011 | Lionsgate | 9/15/2009 |
| Planet Hulk | 2/2/2011 | Lionsgate | 2/2/2010 |
| Gamer | 1/19/2011 | Lionsgate | 1/19/2010 |
| Crank 2:  High Voltage | 9/8/2010 | Lionsgate | 9/8/2009 |
| The Haunting In Connecticut | 7/14/2010 | Lionsgate | 7/14/2009 |
| Terminator 2:  Judgment Day (Limited Edition Complete Collector's Set) | 5/19/2010 | Lionsgate | 5/19/2009 |
| My Bloody Valentine 3D | 5/19/2010 | Lionsgate | 5/19/2009 |
| The Spirit | 4/14/2010 | Lionsgate | 4/14/2009 |
| Punisher:  War Zone | 3/17/2010 | Lionsgate | 3/17/2009 |
| Transporter 3 | 3/10/2010 | Lionsgate | 3/10/2009 |
| Saw V | 1/20/2010 | Lionsgate | 1/20/2009 |
| My Best Friend's Girl | 1/13/2010 | Lionsgate | 1/13/2009 |
| Bangkok Dangerous | 1/6/2010 | Lionsgate | 1/6/2009 |
| Forbidden Kingdom | 9/9/2009 | Lionsgate | 9/8/2008 |
| The Bank Job | 7/15/2009 | Lionsgate | 7/15/2008 |
| Meet the Browns (Tyler Perry's) | 7/1/2009 | Lionsgate | 7/1/2008 |
| The Eye | 6/3/2009 | Lionsgate | 6/3/2008 |
| Rambo | 5/27/2009 | Lionsgate | 5/27/2008 |
| For Colored Girls | | Lionsgate | 2/8/2011 |
| 40 Year Old Virgin | 12/31/2013 | Universal | 12/13/2005 |
| Uncle Buck | 12/31/2012 | Universal | 6/28/2011 |
| Traffic | 12/31/2012 | Universal | 6/28/2011 |
| Spy Game | 12/31/2012 | Universal | 6/28/2011 |
| Smokin' Aces | 12/31/2012 | Universal | 6/28/2011 |
| Out of Africa | 12/31/2012 | Universal | 6/28/2011 |
| Jurassic Park Trilogy | 12/31/2012 | Universal | 10/25/2011 |
| Backdraft | 12/31/2012 | Universal | 6/28/2011 |
| American Gangster | 12/31/2012 | Universal | 2/19/2008 |
| Alpha Dog | 12/31/2012 | Universal | 5/1/2007 |
| Van Helsing | 12/31/2012 | Universal | 6/28/2011 |
| Serenity | 12/31/2012 | Universal | 6/28/2011 |
| Public Enemies | 12/31/2012 | Universal | 12/8/2009 |
| Knocked Up | 12/31/2012 | Universal | 9/25/2007 |
| Forgetting Sarah Marshall | 12/31/2012 | Universal | 9/30/2008 |
| Apollo 13 | 12/31/2012 | Universal | 6/28/2011 |
| Scarface (Limited Edition Steelbook) | 9/30/2012 | Universal | 11/1/2011 |
| State of Play | 6/30/2012 | Universal | 9/1/2009 |
| Carlito's Way | 6/30/2012 | Universal | 6/28/2011 |
| Fast Five | 3/13/2012 | Universal | 10/4/2011 |

| MOVIE NAME | Expiration Date | Studio | Date Released |
|---|---|---|---|
| Bridesmaids | 2/25/2012 | Universal | 9/20/2011 |
| Despicable Me | 12/31/2011 | Universal | 12/14/2010 |
| The Adjustment Bureau | 11/30/2011 | Universal | 6/21/2011 |
| How the Grinch Stole Christmas | 10/6/2011 | Universal | 10/13/2009 |
| Robin Hood | 9/30/2011 | Universal | 9/21/2010 |
| Get Him to the Greek | 9/30/2011 | Universal | 9/28/2010 |
| Little Fockers | 9/23/2011 | Universal | 4/5/2011 |
| The Wolfman | 6/30/2011 | Universal | 6/1/2010 |
| Green Zone | 6/30/2011 | Universal | 6/22/2010 |
| Devil | 5/31/2011 | Universal | 12/21/2010 |
| Scott Pilgrim vs. the World | 4/30/2011 | Universal | 11/9/2010 |
| Couples Retreat | 2/28/2011 | Universal | 2/9/2010 |
| Bruno | 11/30/2010 | Universal | 11/17/2009 |
| Drag Me to Hell | 10/31/2010 | Universal | 10/13/2009 |
| The Last House on the Left | 8/31/2010 | Universal | 8/18/2009 |
| Fighting | 8/31/2010 | Universal | 8/25/2009 |
| The Fast and Furious:  Tokyo Drift | 7/31/2010 | Universal | 9/26/2006 |
| The Fast and Furious | 7/31/2010 | Universal | 6/19/2011 |
| Fast & furious | 7/31/2010 | Universal | 7/28/2009 |
| 2 Fast 2 Furious | 7/31/2010 | Universal | |
| Wanted | 12/31/2009 | Universal | 12/2/2008 |
| The Mummy:  Tomb of the Dragon | 12/31/2009 | Universal | 12/16/2008 |
| Mamma Mia | 12/31/2009 | Universal | 12/16/2008 |
| Death Race | 12/31/2009 | Universal | 12/23/2008 |
| Hellboy II | 11/30/2009 | Universal | 11/11/2008 |
| The Incredible Hulk | 11/10/2009 | Universal | 10/21/2008 |
| Unleashed | | Universal | 6/28/2011 |
| The Last Starfighter | | Universal | 6/28/2011 |
| Inside Man | | Universal | 8/8/2006 |
| Dawn of the Dead | | Universal | 6/28/2011 |
| Darkman | | Universal | 7/28/2011 |
| Back to the Future Trilogy | 11/30/2011 | Universal | 10/26/2010 |
| Tom and Jerry & the Wizard of Oz | 8/23/2012 | Warner Brothers | 8/23/2011 |
| Unknown | 6/19/2012 | Warner Brothers | 6/21/2011 |
| Red Riding Hood | 6/12/2012 | Warner Brothers | 6/14/2011 |
| Hall Pass | 6/12/2012 | Warner Brothers | 6/14/2011 |
| The Rite | 5/12/2012 | Warner Brothers | 5/17/2011 |
| All-Star Superman | 2/20/2012 | Warner Brothers | 2/22/2011 |
| Due Date | 2/20/2012 | Warner Brothers | 2/22/2011 |
| Life as We Know It | 2/6/2012 | Warner Brothers | 2/8/2011 |

| MOVIE NAME | Expiration Date | Studio | Date Released |
|---|---|---|---|
| The Town | 12/15/2011 | Warner Brothers | 12/17/2010 |
| Flipped | 11/21/2011 | Warner Brothers | 8/6/2010 |
| Cats & Dogs:  The Revenge of Kitty Galore | 11/14/2011 | Warner Brothers | 11/16/2010 |
| Superman/Shazam!:  The Rutern of Black Adam | 10/31/2011 | Warner Brothers | 11/9/2010 |
| Harry Potter and the Order of the Phoenix (Ultimate Edition) | 10/31/2011 | Warner Brothers | 12/11/2007 |
| Harry Potter and the Prisoner of Azkaban (Ultimate Edition) | 10/17/2011 | Warner Brothers | 11/23/2004 |
| Harry Potter and the Goblet of Fire (Ultimate Edition) | 10/17/2011 | Warner Brothers | 4/1/2011 |
| Jonah Hex | 10/11/2011 | Warner Brothers | 10/12/2010 |
| Lost Boys:  The Thirst | 10/10/2011 | Warner Brothers | 10/12/2010 |
| A Charlie Brown Christmas | 10/6/2011 | Warner Brothers | 10/6/2009 |
| Splice | 10/3/2011 | Warner Brothers | 10/5/2010 |
| A nightmare on Elm Street (2010) | 10/3/2011 | Warner Brothers | 10/5/2010 |
| Superman/Batman:  Apocalypse | 9/26/2011 | Warner Brothers | 9/28/2010 |
| Harry Potter and the Deathly Hallows, Part 1 (3 Disc Combo Pack) | 9/13/2011 | Warner Brothers | 4/15/2011 |
| Scooby-Doo! Camp Scare (Wal-Mart Exclusive) | 9/12/2011 | Warner Brothers | 9/14/2010 |
| Clash of the Titans | 7/25/2011 | Warner Brothers | 7/27/2010 |
| Batman: Under the Red Hood | 7/25/2011 | Warner Brothers | 7/27/2010 |
| The Losers | 7/18/2011 | Warner Brothers | 7/20/2010 |
| Cop Out | 7/18/2011 | Warner Brothers | 7/20/2010 |
| The Book of Eli | 6/13/2011 | Warner Brothers | 6/15/2010 |
| Valentine's Day | 5/16/2011 | Warner Brothers | 5/18/2010 |
| Invictus | 5/16/2011 | Warner Brothers | 5/18/2010 |
| Edge of Darkness | 5/9/2011 | Warner Brothers | 5/11/2010 |
| Inception | 5/6/2011 | Warner Brothers | 12/7/2010 |
| Batman (DigiBook) | 3/31/2011 | Warner Brothers | 5/19/2009 |
| Sherlock Holmes | 3/28/2011 | Warner Brothers | 3/30/2010 |
| The Blind Side | 3/21/2011 | Warner Brothers | 3/23/2010 |
| Free Willy:  Escape from Pirate's Cove | 3/21/2011 | Warner Brothers | 3/21/2010 |
| Ninja Assassin | 3/14/2011 | Warner Brothers | 3/16/2010 |
| Where the Wild Things Are | 2/28/2011 | Warner Brothers | 3/2/2010 |
| The Informant! | 2/22/2011 | Warner Brothers | 2/23/2010 |
| The Box | 2/22/2011 | Warner Brothers | 2/23/2010 |
| Justice League:  Crisis on the Two Earths | 2/22/2011 | Warner Brothers | 2/23/2010 |
| The Time Traveler's Wife | 2/8/2011 | Warner Brothers | 2/9/2010 |

| MOVIE NAME | Expiration Date | Studio | Date Released |
|---|---|---|---|
| Whiteout | 1/12/2011 | Warner Brothers | 1/19/2010 |
| The Invention of Lying | 1/12/2011 | Warner Brothers | 1/19/2010 |
| The Final Destination (3D) | 1/5/2011 | Warner Brothers | 1/5/2010 |
| The Hangover | 12/15/2010 | Warner Brothers | 12/15/2009 |
| Harry Potter and the Sorcerer's Stone (Ultimate Edition) | 12/8/2010 | Warner Brothers | 12/8/2009 |
| Harry Potter and the Chamber of Secrets (Ultimate Edition) | 12/8/2010 | Warner Brothers | 12/8/2009 |
| Terminator: Salvation | 12/1/2010 | Warner Brothers | 12/1/2009 |
| Shorts | 11/24/2010 | Warner Brothers | 11/24/2009 |
| Four Christmases | 11/24/2010 | Warner Brothers | 11/24/2009 |
| Watchmen: The Ultimate Cut | 11/20/2010 | Warner Brothers | 11/10/2009 |
| My Sister's Keeper | 11/17/2010 | Warner Brothers | 11/17/2009 |
| Sex and the City 2 | 10/30/2010 | Warner Brothers | 10/26/2010 |
| Orphan | 10/27/2010 | Warner Brothers | 10/27/2009 |
| Trick 'r Treat | 10/6/2010 | Warner Brothers | 10/6/2009 |
| The Wizard of Oz (Ultimate Collector's Edition) | 9/29/2010 | Warner Brothers | 9/9/2009 |
| Superman/Batman: Public Enemies | 9/29/2010 | Warner Brothers | 9/29/2010 |
| Scooby-Doo!: The Mystery Begins | 9/22/2010 | Warner Brothers | 9/22/2009 |
| Observe and Report | 9/22/2010 | Warner Brothers | 9/22/2009 |
| Ghosts of Girlfriends Past | 9/22/2010 | Warner Brothers | 9/22/2009 |
| Friday the 13th (killer Cut) | 8/16/2010 | Warner Brothers | 6/16/2009 |
| 17 Again | 8/11/2010 | Warner Brothers | 8/11/2009 |
| Green Lantern: First Flight | 7/28/2010 | Warner Brothers | 7/28/2009 |
| 300: The Complete Experience | 7/28/2010 | Warner Brothers | 6/31/07 |
| Watchmen: Director's Cut | 7/21/2010 | Warner Brothers | 7/21/2009 |
| Mr. Troop Mom | 6/23/2010 | Warner Brothers | 6/23/2009 |
| Inkheart | 6/23/2010 | Warner Brothers | 6/23/2009 |
| Gran Torino | 6/8/2010 | Warner Brothers | 1/9/2009 |
| He's Just Not That Into You | 6/1/2010 | Warner Brothers | 6/2/2009 |
| Harry Potter and the Half Blood Prince | 5/7/2010 | Warner Brothers | 12/8/2009 |
| Yes Man | 4/6/2010 | Warner Brothers | 4/7/2009 |
| The Matrix | 3/31/2010 | Warner Brothers | 10/14/2008 |
| Watchmen: Tales of the Black Freighter & Under the Hood | 3/23/2010 | Warner Brothers | 3/24/2009 |
| Wonder Woman | 3/3/2010 | Warner Brothers | 3/3/2009 |
| Watchmen: The Complete Motion Comic | 3/2/2010 | Warner Brothers | 3/3/2009 |
| Body of Lies | 2/17/2010 | Warner Brothers | 2/17/2009 |
| The Pelican Brief | 2/10/2010 | Warner Brothers | 2/10/2009 |

| MOVIE NAME | Expiration Date | Studio | Date Released |
|---|---|---|---|
| Nights in Rodanthe | 2/10/2010 | Warner Brothers | 2/10/2009 |
| Amadeus: Director's Cut (DigiBook) | 2/10/2010 | Warner Brothers | 2/10/2009 |
| A Time to Kill | 2/10/2010 | Warner Brothers | 2/10/2009 |
| Spring Breakdown | 2/3/2010 | Warner Brothers | 6/2/2009 |
| RocknRolla | 1/27/2010 | Warner Brothers | 1/27/2009 |
| Pride and Glory | 1/27/2010 | Warner Brothers | 1/27/2009 |
| Any Given Sunday | 1/27/2010 | Warner Brothers | |
| Appaloosa | 1/6/2010 | Warner Brothers | 1/13/2009 |
| Supernatural:  The Complete Third | 12/31/2009 | Warner Brothers | 9/2/2008 |
| I am Legend (Ultimate Collector's Edition) | 12/9/2009 | Warner Brothers | 3/18/2008 |
| Get Smart | 12/9/2009 | Warner Brothers | 11/4/2008 |
| Fred Clause | 11/25/2009 | Warner Brothers | 11/25/2008 |
| Sisterhood of Traveling Pants 2 | 11/18/2009 | Warner Brothers | 1/18/2008 |
| Star Wars - the Clone Wars | 11/11/2009 | Warner Brothers | 11/11/2008 |
| Journey to the Center of the Earth | 10/28/2009 | Warner Brothers | 10/28/2008 |
| Constantine | 10/14/2009 | Warner Brothers | |
| Sex and the City:  the Movie | 9/23/2009 | Warner Brothers | 9/23/2008 |
| Speed Racer | 9/16/2009 | Warner Brothers | 9/16/2008 |
| Risky Business | 9/16/2009 | Warner Brothers | 9/16/2008 |
| Another Cinderella Story | 9/16/2009 | Warner Brothers | 9/16/2008 |
| The Dark Knight | 7/29/2009 | Warner Brothers | 7/18/2008 |
| Lost Boys:  The Tribe | 7/29/2009 | Warner Brothers | 7/29/2008 |
| Harold and Kumar Escape from Guantanamo Bay | 7/29/2009 | Warner Brothers | 6/29/2008 |
| 10,000 BC | 6/30/2009 | Warner Brothers | 6/24/2008 |
| Yogi Bear | | Warner Brothers | 3/22/2011 |
| Sucker Punch | | Warner Brothers | 6/28/2011 |
| Scooby Doo:  Curse of the Lake Monster | | Warner Brothers | 3/1/2011 |
| Lottery Ticket | | Warner Brothers | 11/16/2010 |
| Legend of the Guardians:  The Owls of Ga'hoole (3 Disc Combo Pack) | | Warner Brothers | 12/17/2010 |
| Hereafter (Combo Pack) | | Warner Brothers | 3/15/2011 |
| Green Lantern:  Emerald Knights | | Warner Brothers | 6/7/2011 |